## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ○

In re:

BEDMAR, LLC,[1]

                 Debtor.

: Chapter 11
:
:
: Case No. 25-11027 (JKS)
:
:
: **Hearing Date: July 29, 2025, at 9:30 a.m.**
: **Objections Due: July 16, 2025, at 4:00 p.m.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ○

## MOTION OF THE UNITED STATES TRUSTEE
## TO DISMISS OR CONVERT THE DEBTOR'S CHAPTER 11 CASE

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, moves to dismiss or convert the chapter 11 case of Bedmar, LLC (the "Debtor"), and in support of his motion respectfully states:

### PRELIMINARY STATEMENT

1.      This case was not filed in good faith.  It does not serve a valid bankruptcy purpose because it exploits Section 502(b)(6) and subverts Section 524(e).  The case is designed to ring-fence and cap select liabilities and guaranties in the Debtor, then discharge them through a chapter 11 plan.  In addition, the Debtor was created under the Delaware LLC Act on the eve of bankruptcy, yet the Debtor's plan could prejudice creditors' rights to pursue fraudulent conveyance claims enshrined in that same statute.  *See* DLLCA § 18-217(*l*)(4)-(5).  Both of the aforementioned aspects of this case violate 11 U.S.C. § 524(e).  In addition, most of the *Primestone* factors are present, and the Debtor has not shown it is in financial distress.  The Court should dismiss the case.

---

[1]  The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Bedmar, LLC (5047).  The Debtor's mailing address is P.O. Box 68, Yorklyn, DE 19736.

## JURISDICTION & STANDING

2.      Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this motion.

3.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").  Pursuant to 28 U.S.C. § 586(a)(8), the U.S. Trustee shall "in any case in which the United States trustee finds material grounds for any relief under section 1112 of title 11, apply promptly after making that finding to the court for relief."

4.      The U.S. Trustee has standing to be heard on this motion pursuant to 11 U.S.C. § 307.

## BACKGROUND

5.      About June 3, 2025, the Debtor was created in connection with a divisional merger under the Delaware LLC Act. *See* D.I. 82 ¶ 2.

6.      As a result of the divisional merger and merger with Bedmar Holdco LLC, the Debtor's assets and liabilities include: (1) leasehold interests in seven leases; (2) lease guaranties for five properties including four of the leased sites; (3) cash and receivables totaling $41.4 million; and (4) a 51% membership stake in a subsidiary. *See id.* ¶¶ 2 & 14.

7.      Section 18-217(*l*) of the Delaware LLC Act provides in relevant part (emphasis added):

Upon the division of a domestic limited liability company becoming effective:

[ . . . ]

(4) Each of the debts, liabilities and duties of the dividing company shall without further action be allocated to and be the debts, liabilities and duties of such division company as is specified in the plan of division as having such debts, liabilities and duties allocated to it, in such a manner and basis and with such effect as is specified in the plan of division, and no other division company shall be liable therefor, ***so long as the plan of division does not constitute a fraudulent transfer under applicable law,*** and all liens upon any property of the dividing company shall be preserved unimpaired, and all debts, liabilities and duties of the dividing company shall remain attached to the division company to which such debts, liabilities and duties have been allocated in the plan of division, and may be enforced against such division company to the same extent as if said debts, liabilities and duties had originally been incurred or contracted by it in its capacity as a domestic limited liability company.
(5) ***In the event that any allocation of assets, debts, liabilities and duties to division companies in accordance with a plan of division is determined by a court of competent jurisdiction to constitute a fraudulent transfer, each division company shall be jointly and severally liable on account of such fraudulent transfer notwithstanding the allocations made in the plan of division***; provided, however, the validity and effectiveness of the division are not otherwise affected thereby.

8.      On June 9, 2025, the Debtor filed a chapter 11 petition in this Court.

9.      On June 10, 2025, the Debtor filed its *Prepackaged Plan of Reorganization of Bedmar, LLC Under Chapter 11 of the Bankruptcy Code* [D.I. 7] (the "Plan").

10.     Article IX.C of the Plan provides in relevant part:

Except as otherwise expressly set forth in this Plan or the Combined Order, . . . each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Related Parties, and any and all other Entities who may purport to assert any Claim or Cause of Action . . . has and is deemed to have, forever and unconditionally (x) released, absolved, acquitted, and discharged the Debtor and the Reorganized Debtor and (y) released[,] absolved, and acquitted every other Released Party from any and all Claims and Causes of

Action . . . based on or relating to, or in any manner arising from, in whole or in part, . . . (iii) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in [] this Plan, including the negotiation, formulation, or preparation of any transaction related to effectuating this Plan; (iv) the business or contractual arrangements between the Debtor or any Non-Debtor Affiliate and any other Entity; (v) the Debtor and Non-Debtor Affiliates' in- or out-of-court restructuring efforts; (vi) intercompany transactions; (vii) the Definitive Documents, the Chapter 11 Case, . . . or any transaction related to effectuating this Plan; (viii) any contract, instrument, release, or other agreement or document created or entered into in connection with the Definitive Documents or any transaction related to effectuating this Plan . . . or (x) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date[.]

11.      The Plan defines "Released Parties" to include "(a) the Debtor; (b) the Reorganized Debtor; (c) each Non-Debtor Affiliate; . . . and (f) each Related Party of each Entity in clause (a) through (e)[.]" *Id.* § I.A.68.

12.      The Plan defines "Related Parties" to include "an Entity's predecessors, successors and assigns, parents, subsidiaries, [and] affiliates . . . and all of their respective current and former . . . shareholders [and] members[.]" *Id.* § I.A.67.

13.      The Plan defines "Releasing Party" to include "(b) each Holder of a Claim or Interest that (i) does not timely File with the Bankruptcy Court on the docket of the Chapter 11 Case an objection to this Plan on the basis of the Claimant Release, (ii) Files such an objection that is consensually resolved with the Debtor on terms providing for such Holder to be a Releasing Party or that is withdrawn before Confirmation, or (iii) Files an objection that is thereafter overruled by the Bankruptcy Court . . . *provided*, that in each case, an Entity shall not be a Releasing Party if it elects to opt out of the Releases." *Id.* § I.A.70.

14.    The Plan defines "Definitive Documents" to include "collectively, the documents and agreements (and the exhibits, schedules, annexes, and supplements thereto) necessary to implement, or entered into in connection with, this Plan[.]"  *Id.* § I.A.23.

15.    The Plan defines "Causes of Action" to include "(e) any . . . state law fraudulent transfer or similar claim."  *Id.* § I.A.11.

16.    On June 11, 2025, the Court held a first-day hearing in this case.  At the hearing, Debtor's proposed counsel advised the Court that the Debtor had not prepared the Plan in cooperation with affected landlords.

17.    The Debtor has no employees.  *See Declaration of Christopher S. Sontchi, Independent Manager of the Debtor, in Support of Chapter 11 Petition and First Day and Other Pleadings* [D.I. 6] (the "<u>FDD</u>") ¶¶ 12, 37 & 42.  Its only operations are winding down the seven leases it received in connection with the divisional merger.  *See id.* ¶ 42.  The Debtor is unable to perform those operations itself.  *See id.*  The Debtor's Official Form 204 shows seven creditors.  *See* D.I. 1.  The Debtor has no material pre-petition secured debt.  *See* FDD ¶ 11.  Its accrued and unpaid obligations, as of the petition date, were "limited almost exclusively to certain outstanding lease obligations with respect to the Sites."  *Id.*  The Debtor was formed, and received its assets and liabilities, a few days before it filed for bankruptcy.  *Id.* ¶ 30.

18.    At the hearing on June 26, 2025, counsel for the Debtor's parent (Bedmar Member, Inc.) advised the Court that (1) under the plan of division Resilience US, LLC was divided into four separate LLCs including the Debtor; (2) the plan of division allocates assets, including cash and an intercompany receivable that is in a separate special purpose vehicle; (3) at the time of division, the receivable reserved in the special purpose vehicle was intended to be reserved for

landlords' capped damages; and (4) the cash in the special purpose vehicle is available to the Debtor in the discretion of the independent manager.

## **ARGUMENT**

19.     The Court should dismiss the Debtor's case because it was not filed in good faith.

20.     Section 1112(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

21.     The examples of cause listed in Section 1112(b) are not exhaustive, and the Court has discretion in determining if cause exists. *See Matter of NuGelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992); *see also* 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed). The Court may convert or dismiss a case for reasons that are not specifically enumerated in Section 1112. *See In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991).

22.     The Court may dismiss a chapter 11 case for cause under Section 1112(b) if the case is not filed in good faith. *See In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999); *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 210-11 (3d Cir. 2003).

23.     The Bankruptcy Code does not define "good faith." Two inquiries relevant to the question of good faith are whether the petition (1) serves a valid bankruptcy purpose or (2) is filed simply to obtain a tactical litigation advantage. *See In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009).

24.     The Debtor has the burden of establishing its petition was filed in good faith.  *See In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d at 618; *see also In re LTL Mgmt., LLC*, 64 F.4th 84, 100 (3d Cir. 2023).

25.     A debtor can establish that its petition serves a valid bankruptcy purpose by showing that the filing preserves a going concern or maximizes the value of the debtor's estate. *See In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d at 619.

26.     A debtor's desire "to take advantage of a particular provision in the Bankruptcy Code, standing alone," does not establish good faith.  *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 127 (3d Cir. 2004).  Specifically, a desire to cap lease-rejection damages under Section 502(b)(6) cannot establish good faith because Section 502(b)(6) assumes a valid bankruptcy by a debtor in financial distress.  "The question of good faith is therefore antecedent to the operation of § 502(b)(6)." *Id.* at 128.

27.     Determining whether a petition has been filed in good faith involves a fact-intensive inquiry that looks at the totality of circumstances.  *In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d at 618.  Relevant factors include: (1) single asset case; (2) few unsecured creditors; (3) no ongoing business or employees; (4) petition filed on eve of foreclosure; (5) two-party dispute which can be resolved in pending state court action; (6) no cash or income; (7) no pressure from non-moving creditors; (8) previous bankruptcy petition; (9) pre-petition conduct was improper; (10) no possibility of reorganization; (11) debtor formed immediately prepetition; (12) debtor filed solely to create automatic stay; and (13) subjective intent of the debtor.  *See In re Primestone Inv. Partners L.P.*, 272 B.R. 554, 557 (D. Del. 2002) (*citing*, *inter alia*, *In re SGL Carbon Corp.*, 200 F.3d at 165).

28.     The good-faith inquiry focuses on whether the petitioner sought "to achieve objectives outside the legitimate scope of the bankruptcy laws" when filing for protection under chapter 11.  *In re Primestone Inv. Partners L.P.*, 272 B.R. at 558 (*citing*, *inter alia*, *SGL Carbon*, 200 F.3d at 165); *see also In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 345 (Bankr. D. Del. 1998) ("[I]n evaluating a debtor's good faith, the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended.")(quoting *In re Clinton Centrifuge, Inc.*, 72 B.R. 900, 905 (Bankr. E.D. Pa. 1987)).

## I.    No Valid Bankruptcy Purpose

29.     The Debtor's case does not serve a valid bankruptcy purpose.

30.     "The bankruptcy code contains hundreds of interlocking rules about the relations between a debtor and its creditors.  But beneath that complexity lies a simple bargain: A debtor can win a discharge of its debts if it proceeds with honesty and places virtually all its assets on the table for its creditors."  *Harrington v. Purdue Pharma L.P.*, 603 U.S. ____, 144 S. Ct. 2071, 2077-78 (2024) (internal quotation marks, brackets, citation omitted).

31.     This case subverts that bargain.  The Debtor and its non-debtor affiliates seek to *evade* putting all of the enterprise's assets on the table for creditors.  They are using the combination of the state law division/merger and this bankruptcy case to curate which of National Resilience's and Resilience US's assets are available to satisfy landlord lease and guaranty claims, which would be capped under Section 502(b)(6), with old equity retaining its interests in key assets.  *See Integrated Telecom Express, Inc.*, 384 F.3d at 129 ("Nothing in the Bankruptcy Code or its legislative history suggests that § 502(b)(6) was meant to allow tenants to avoid their leases whenever the landlord's state law remedy exceeds the cap under § 502(b)(6) by an amount greater than the cost of proceeding through a Chapter 11 reorganization or liquidation.  Such a rule would

not only obviate the need for a good faith requirement, but would be antithetical to the structure and purposes of the Bankruptcy Code."); *In re Liberate Tech.*, 314 B.R. 206, 215 (Bankr. N.D. Cal. 2004) ("Close examination of section 502(b)(6) suggests that Congress intended that the cap on claims for future rent be used only by entities with a real need for bankruptcy relief. . . . There is no evidence that Congress determined that state landlord-tenant law should be superseded by federal law except where necessary to help an entity with genuine financial problems. Stated differently, limiting claims for future rent is not an independent objective of the Bankruptcy Code."); *In re LTL Mgmt., LLC*, 64 F.4th at 103 ("Congress designed Chapter 11 to give those businesses teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability.")(quoting *Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*, 235 F.3d 375, 381 (8th Cir. 2000)).

32.    The Debtor and its non-debtor affiliates are attempting to use the Section 502(b)(6) cap to get around the absolute priority rule by denying affected landlords, whose leases would be erased, the ability to vote no on the Plan while allowing old equity to retain their interests in the bankruptcy-remote business. However, the Debtor's lease guaranties—which, pre-division/merger, were obligations of National Resilience[2]—are not "claim[s] of [] lessor[s] for damages resulting from the termination of a lease of real property[.]" 11 U.S.C. § 502(b)(6). Rather, they are claims of lessors for breach of a contractual agreement to pay when the lessee fails to do so. As such, the guaranty claims raise the issue of whether the Plan is patently unconfirmable as proposed, given that impaired guaranty creditors are not voting on the Plan. If a plan class

---

[2] See D.I. 82 ¶ 14.

consisting of the guaranty creditors is the lone impaired class under a plan and votes against the plan, the plan is unconfirmable.  11 U.S.C. § 1129(a)(10).

33.    That Section 502(b)(6) could be used to cap lease-rejection damages in this way is questionable, because that statute, just one of the hundreds of interlocking rules governing the relationship between a debtor and its creditors, was designed to strike a balance between landlord claims and other general unsecured claims.  *See In re PPI Enters. (U.S.), Inc.*, 324 F.3d at 207-08 (502(b)(6) damages cap was meant to compensate landlords for their losses "while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate.") (quoting legislative history).  But here the Debtor's creditor body was engineered to be *exclusively* landlords.  There are no trade creditors to protect from dilution.  The Debtor appears to be using a statute that was designed to be a shield for trade creditors as a sword against select landlords.  "At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy[.]"  *Integrated Telecom Express, Inc.*, 384 F.3d at 119.

34.    Worse, the Debtor and its non-debtor affiliates, through the combination of the state law division/merger and this bankruptcy case, seek to employ the Bankruptcy Code for a purpose for which it was not intended: to discharge non-debtors from their guaranty obligations.  The Debtor and its non-debtor affiliates took lease guaranties which were obligations of National Resilience, dumped them in the Debtor, and are now attempting to discharge those liabilities through the Plan.  That violates Bankruptcy Code Section 524(e).  Section 524(e) "makes clear that a discharge in bankruptcy does not extinguish claims by third parties against guarantors . . . of

10

the debtor for the debt discharged in bankruptcy." *In re PWS Holding Corp.*, 228 F.3d 224, 245-46 (3d Cir. 2000).

35.    More specifically, Section 524(e) does not discharge non-debtor lease guaranties. *See In re Modern Textile, Inc.*, 900 F.2d 1184, 1191-92 (8th Cir. 1990) (under Sections 524(e) and 502(b)(6), bankruptcy does not extinguish a non-debtor guarantor's obligations under a debtor's lease; although Section 502(b)(6) "limits the amount which a lessor can claim against the debtor's bankrupt estate following the Trustee's rejection of an unexpired lease . . . that limitation does not operate to cut off and extinguish the lessor's claim for amounts in excess of the amount chargeable to the debtor's estate. . . . [T]he lessor's claim for breach survives the Trustee's rejection; thus, the lessor can still look to the person or entity that guaranteed the debtor's lease obligations. In other words, the liability of a guarantor for a debtor's lease obligations is not altered by the Trustee's rejection of the lease."). Here, before the divisional merger, National Resilience could not have discharged its guaranty obligations under the leases without filing for bankruptcy itself. This case would effectively give National Resilience that discharge, by placing both the leases and the guaranties into the Debtor on the eve of bankruptcy, then discharging them through the Plan.[3] Because the Debtor and its non-debtor affiliates filed the case as a workaround of Section 524(e), they seek to use the Bankruptcy Code for a purpose for which it was not intended.

36.    Worse still, the Plan could remove a fundamental protection the Delaware LLC Act gives creditors in a divisional merger. The Delaware LLC Act predicates divisional mergers on the transaction not being a fraudulent transfer, and makes the division companies jointly and severally liable if a court of competent jurisdiction determines that the divisional merger ***is*** a

---

[3] The Debtor says it holds "lease guaranties with respect to **five** properties including **four** of the Sites[.]" D.I. 82 ¶ 2 (emphasis added). In other words, the Debtor may hold a guaranty of a non-debtor affiliate's lease. Schedule A to the Plan shows one pure guaranty claim (and $0 in "rejection damages" for stripping it off). D.I. 7 Sch. A at 2.

fraudulent transfer under applicable law.  *See* 6 Del. C. § 18-217(*l*)(4)-(5).  But the Plan could

remove that protection.  The Plan would discharge the Debtor and release the third-party releasees

(including the Debtor's non-debtor affiliates) from any liability for "Causes of Action," which

includes "any . . . state law fraudulent transfer or similar claim."  *See* Plan §§ I.A.11, I.A.68, IX.A,

& IX.B.  *Cf. Miller v. Mott*, 2023 WL 6467368 at *3-*5 (Bankr. D. Del. Oct. 4, 2023) (*CML V,*

*LLC v. Bax*, 28 A.3d 1037 (Del. 2011) and Delaware LLC Act do not bar chapter 7 trustee from

pursuing creditor claims for fraudulent conveyance).  Thus, the Debtor would form in a divisional

merger under the Delaware LLC Act, and a few days later file a chapter 11 plan that could remove

a fundamental creditor protection enshrined in that same Act.  It appears the Debtor is cherry-

picking which provisions of the law of its formation it wishes to comply with.  This indicates a

lack of good faith and further supports dismissal.

## II.   *Primestone* Factors Indicate Lack of Good Faith

37.   The Court should dismiss the Debtor's case because most of the *Primestone*

factors indicating lack of good faith are met:

| *Primestone* factor | Bedmar, LLC |
|---|---|
| Single asset case | Debtor's assets = (1) cash; (2) intercompany receivable; (3) leasehold interests subject to rejection; and (4) equity stake in non-debtor subsidiary.  FDD ¶¶ 21-22. |
| Few unsecured creditors | Seven unsecured creditors.  D.I. 1. |
| No ongoing business or employees | Business is limited to winding down seven leases in June 2025, which Debtor cannot do itself because it has no employees.  FDD ¶¶ 11 & 42. |
| Petition filed on eve of foreclosure | N/A, because Debtor was created on eve of bankruptcy. |
| Two-party dispute which can be resolved in pending state court action | N/A |

| | |
|---|---|
| No cash or income | About $4.75 million cash; no income. |
| No pressure from non-moving creditors | No apparent pressure from affected landlords; no record of pre-petition default or litigation; Debtor did not negotiate terms of Plan with affected landlords pre-petition. |
| Previous bankruptcy petition | N/A, because Debtor was created on eve of bankruptcy. |
| Pre-petition conduct was improper | This motion describes a scheme by the Debtor and its non-debtor affiliates to improperly protect assets and wash liabilities through this bankruptcy case. |
| No possibility of reorganization | Debtor is a "non-operating business" that cannot wind down the unwanted leases on its own accord. D.I. 82 ¶ 5 & FDD ¶ 42. |
| Debtor formed immediately prepetition | Debtor formed less than 10 days pre-petition.  FDD ¶ 30. |
| Debtor filed solely to create automatic stay | Debtor filed solely to cap lease-rejection damages (and discharge them and lease guaranties through the Plan). |
| Subjective intent of the debtor | Exploiting 11 U.S.C. § 502(b)(6) while circumventing 11 U.S.C. § 524(e). |

38.    For the above reasons, the Court should dismiss the Debtor's case.

**III.    Debtor Has Not Shown Financial Distress**

39.    The Debtor has not shown it is in financial distress.  "[A] debtor who does not suffer from financial distress cannot demonstrate its Chapter 11 petition serves a valid bankruptcy purpose supporting good faith."  *In re LTL Mgmt., LLC*, 64 F.4th at 101.  The debtor's financial distress must be tested independently of any other entity.  *See id.* at 105.  Here, as in *LTL*, the Debtor was "created to file for bankruptcy" and had a "short life outside of bankruptcy."  *Id.* at 109-110.  There is no showing that the leases were in default or subject to litigation before the

13

divisional merger.  There is no showing that the Debtor faces a flood of litigation or mass tort liability.  To the contrary: the Plan shows all classes of claims as unimpaired.

40.    The Debtor states that its predecessor(s) sought financing for 18 months, during which the predecessor's "cash reserve" was "depleted" by the rent on the leases.  FDD ¶ 29.  This does not establish financial distress.  The dollar amount of the cash reserve is not disclosed.  The extent of depletion is not disclosed.  The inability to pay obligations as they come due is not disclosed.  Nothing about the predecessor's business plan or the conduct of its management is disclosed.  The Debtor states that its "Original Parent determined that the financing necessary to maintain its operational manufacturing facilities . . . could be obtained only if the nonoperational and/or underutilized facilities could be wound down in a prompt and efficient manner."  *Id.*  But this statement suggests the case is about advancing the restructuring interests of the *Original Parent* (or its non-debtor successors)—not the Debtor.  *Cf. In re 15375 Memorial Corp. v. BEPCO, L.P.*, 589 F.3d at 624 (bankruptcy court's analysis of good faith failed to consider that debtor's representative "*was primarily concerned with protecting [the non-debtor parent], not the Debtors*.").  Under *LTL*, only the debtor's financial condition is determinative of good faith.  *In re LTL*, 64 F.4th at 105.  "[A]s separateness is foundational to corporate law, which in turn is a predicate to bankruptcy law, it is not easily ignored.  It is especially hard to ignore when J&J's pre-bankruptcy restructuring—ring-fencing talc liabilities in LTL and forming the basis for this filing—depended on courts honoring this principle."  *Id.* at 105-06.  In *LTL*, the Third Circuit noted that a company's financial health could be threatened where "uncertain and unliquidated future liabilities could pose an obstacle to a debtor efficiently obtaining financing and investment."  *Id.* at 102.  Here, nothing is uncertain or unliquidated about the liabilities under the leases.  The non-debtor affiliates simply want a discharge from paying and guaranteeing them.

14

41.     To the extent the Debtor claims it is insolvent or undercapitalized as a result of the divisional merger, that would tend to make any Plan release or discharge of creditors' fraudulent transfer rights under DLLCA § 18-217(*l*)(4)-(5) more problematic.

### RESERVATION OF RIGHTS/CONCLUSION

42.     The U.S. Trustee reserves all rights to, among other things, (i) amend or supplement this motion and (ii) conduct discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court dismiss the Debtor's chapter 11 case, or alternatively convert it to one under chapter 7.

Dated: June 30, 2025                          Respectfully submitted,
Wilmington, Delaware

                                              **ANDREW R. VARA**
                                              **UNITED STATES TRUSTEE**
                                              **REGIONS 3 & 9**


                                              By: */s/ Benjamin Hackman*
                                              Benjamin A. Hackman
                                              Trial Attorney
                                              Department of Justice
                                              Office of the United States Trustee
                                              J. Caleb Boggs Federal Building
                                              844 King Street, Suite 2207,
                                              Lockbox 35
                                              Wilmington, DE 19801
                                              (302) 573-6491
                                              (302) 573-6497 (fax)
                                              benjamin.a.hackman@usdoj.gov